UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DONNA L. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 6050 |
| | ) | |
| | ) | Judge Ruben Castillo |
| CITY OF CHICAGO and | ) | |
| TERENCE WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Chicago police officer Donna Lewis ("Plaintiff") brought this suit against the City of Chicago ("City") and her former supervisor Lieutenant Terence Williams ("Williams") (collectively "Defendants") raising various claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and 42 U.S.C. § 1983. (R. 1, Compl.) This Court granted summary judgment for Defendants on all claims, and Plaintiff appealed. *Lewis v. City of Chicago*, 428 F. Supp. 2d 783 (N.D. Ill. 2006). The Seventh Circuit affirmed in part, but remanded for a trial on Plaintiff's gender discrimination claims against both Defendants, and her retaliation claim against the City. *Lewis v. City of Chicago*, 496 F.3d 645, 648 (7th Cir. 2007). Following an eight-day jury trial, on December 21, 2007, the jury entered a verdict in favor of Defendants. (R. 208, Minute Entry.) Plaintiff now moves for a new trial on various grounds. (R. 211, Mot. for New Trial.) For the following reasons, the motion is denied.

The background facts underlying this case were set forth in the prior opinions and will not be repeated here. *See Lewis*, 496 F.3d at 648-650; *Lewis*, 428 F. Supp. 2d at 788-791. Plaintiff

1

argues that she is entitled to a new trial pursuant to Federal Rule of Civil Procedure 59 for the following reasons: (1) the jury instructions were erroneous; (2) the Court abused its discretion with respect to certain evidentiary rulings; (3) Defendants' comments during closing argument unfairly prejudiced her; and (4) the jury's verdict was "against the manifest weight of the evidence." (R. 224, Suppl. to Mot. for New Trial.)[1]

## ANALYSIS

A new trial should be granted under Rule 59 "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Davis v. Wis. Dep't of Corr.*, 445 F.3d 971, 979 (7th Cir. 2006). The Court considers each of Plaintiff's arguments in support of her request for a new trial.

## I.    Jury Instructions

Plaintiff first argues that the jury instructions were "fraught with legal error." (R. 224, Suppl. to Mot. for New Trial at 2.) In determining whether errors in the jury instructions warrant a new trial, the Court must consider "whether, taken as a whole, they correctly and completely informed the jury of the applicable law." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). A new trial is warranted when the instructions "misstate the law or fail to convey the relevant legal principles in full and when those shortcomings confuse or mislead the jury and prejudice the

---

[1] On January 8, 2008, Plaintiff timely filed her Rule 59 motion seeking a new trial. (R. 211, Mot. for New Trial.) At the time the motion was filed the complete trial transcripts were not yet available, and accordingly, this Court granted Plaintiff an extension until February 25, 2008, to file a supplement to her Rule 59 motion citing to the relevant portions of the transcript. (R. 220, Minute Entry.) Plaintiff timely filed her "supplement" to the motion, which is in itself a complete document that contains all of Plaintiff's arguments in support of her request for a new trial. (R. 224, Suppl. to Mot. for New Trial.)

objecting litigant." *Id.* In determining whether the instructions adequately informed the jury of the applicable law, the Court must consider the instructions in their entirety rather than in isolation. *Alcala v. Emhart Indus., Inc.*, 495 F.3d 360, 363 (7th Cir. 2007).

## A. Materially Adverse Employment Action

Plaintiff first takes issues with the Court's instruction on her gender discrimination claims, arguing that the Court misadvised the jury on the materially adverse employment action element. (*Id.* at 4-7.) In instructing the jury on Plaintiff's gender discrimination claims, the Court first instructed regarding the legal basis of these claims, quoting directly from 42 U.S.C. § 2000e-2(a). (R. 206, Jury Instructions.) The Court thereafter instructed as follows:

> Plaintiff's claim of gender discrimination is brought against both the City of Chicago and Lieutenant Terence Williams. Plaintiff Lewis claims that she was denied the opportunity to participate in the IMF Detail in Washington D.C. in September 2002 by Defendants City of Chicago and Williams because of her gender.
>
> To succeed on this claim, Plaintiff Lewis must first prove by a preponderance of the evidence that the denial of the opportunity to participate in the IMF Detail in Washington D.C. was a materially adverse employment action. Not everything that makes an employee unhappy is a materially adverse employment action. It must be something more than a minor or trivial inconvenience. For example, a materially adverse employment action exists when someone's pay or benefits are decreased; when her job is changed in a way that significantly reduces her career prospects; or when job conditions are changed in a way that significantly changes her work environment in an unfavorable way. The denial of an opportunity to earn overtime is a materially adverse employment action if the overtime is a significant and recurring part of an employee's total earnings. On the other hand, if the opportunity to earn overtime is insignificant and nonrecurring, it will not be a materially adverse employment action.

(Tr. at 1017-18.) The bulk of this language was taken directly from the Seventh Circuit's Pattern

3

Civil Jury Instruction 3.01 and Comment E to that Pattern Instruction. As to the last two lines pertaining to the loss of overtime, Comment E provides that in the rare case where a fact issue arises as to whether the plaintiff suffered a materially adverse employment action, "a court should modify the instruction to provide the jury with guidance as to what this term means." Seventh Circuit Pattern Jury Instruction 3.01, Comment E. During the jury instruction conference, this Court determined that this was one of those rare cases. (Tr. at 910-11.) This conclusion is in accordance with the Seventh Circuit's holding that Plaintiff "can demonstrate a genuine issue of material fact as to whether she has experienced an adverse employment action." *Lewis*, 496 F.3d at 654. The instruction on overtime was adopted from the Seventh Circuit's explanation as to when the denial of overtime may constitute an adverse employment action, and when it may not. *See id.* at 653-54. The instruction given properly instructed the jury on the law, and the Court finds no error.

## B.     Intentional Discrimination

Plaintiff next argues that the Court improperly instructed the jury that she was required to prove that Defendants intentionally discriminated against her. (R. 224, Suppl. to Mot. for New Trial at 8.) As an initial matter, Plaintiff failed to object to the inclusion of the intentional discrimination language at trial. (*See id.*, Ex. C, Pl.'s Objections to Defs.' Proposed Instruction No. 1; Tr. at 909-11.) Failure to object to a jury instruction at trial results in a waiver. *Chesnut v. Hall*, 284 F.3d 816, 819 (7th Cir. 2002) (objection to jury instruction must be timely made or is waived); *see also* Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for objection."); *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1006 (7th

4

Cir. 2008) ("Arguments that could have been made earlier but are instead raised for the first time in a Rule 59 motion are waived.").

In the absence of a proper objection, the Court can consider whether there was plain error in the instruction that affected Plaintiff's substantial rights. Fed. R. Civ. P. 51(d)(2); *Higbee v. Sentry Ins. Co.*, 440 F.3d 408, 409 (7th Cir. 2006). The Court finds no such error. The case law is clear that in a disparate treatment case like this one, the plaintiff must prove intentional discrimination. *See, e.g., Lewis v. City of Chicago*, ---F.3d---, 2008 WL 2262201, at *1 (7th Cir. 2008) (observing that disparate treatment case involves intentional discrimination); *Benders v. Bellows & Bellows*, 515 F.3d 757, 768 n.7 (7th Cir. 2008) ("The same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection claims."); *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1031 (7th Cir. 1998) ("Proof of intentional discrimination is required under a disparate treatment analysis."). Indeed, Plaintiff's own proposed instruction on circumstantial evidence, which was given by the Court, acknowledged that Plaintiff must prove intentional discrimination. (*See* R. 206, Pl.'s Instruction No. 6 ("Circumstantial evidence may provide sufficient basis for an inference of intentional discrimination.").

Plaintiff argues that this Court should have given an instruction stating that her gender need only have been a "motivating factor" in the Defendants' decision. (R. 224, Suppl. to Mot. for New Trial at 7-8.) Comment B to the Seventh Circuit Pattern Jury Instruction 3.01 states that, although some other Circuits employ the "motivating factor" language in all Title VII cases, "the Committee drafted these instructions with the understanding that the 'motivating factor' language is appropriate in mixed motive cases . . . ." Seventh Circuit Pattern Jury Instruction

5

3.01, Comment B. "A mixed motive case is one in which both legitimate and illegitimate reasons motivate an employment decision." *Hossack v. Floor Covering Assoc. of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007). In such a case, if the plaintiff can demonstrate that her protected status was a substantial or motivating factor behind the defendant's adverse employment action, the burden shifts to the defendant to show that it would have reached the same decision even in the absence of the discriminatory motive. *Roadway Exp., Inc. v. U.S. Dep't of Labor*, 495 F.3d 477, 485-86 (7th Cir. 2007). "An employer can avoid a finding of liability in such a case by proving that it would have made the same decision even if it had not allowed sex to play a discriminatory role. . . ." *Hossack*, 492 F.3d at 860.

Here, Defendants never raised a mixed-motive defense or admitted that the decision to deny Plaintiff's request to participate in the IMF detail was motivated in part by gender. Instead, the evidence regarding Defendants' motive was hotly contested. Plaintiff testified that Williams told her she could not go on the IMF detail because she is a woman and he thought it would be too dangerous, but Williams flatly contradicted this testimony. His testimony was that Plaintiff was not permitted to go on the detail because of the memorandum regarding hotel arrangements issued by Chief Mauer. The facts adduced at trial thus did not fit within a mixed-motive scenario. The Court notes additionally that during the jury instruction conference, Plaintiff appeared to abandon her request for the "motivating factor" instruction after Defendants objected, and instead focused on the parties' disagreement over the materially adverse employment action element. (*See* Tr. at 909-910.) This Court finds no error, plain or otherwise, in the instructions given.

6

## C. Retaliation

Plaintiff next argues that this Court's retaliation instruction was "directly contrary" to the

Supreme Court's decision in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53

(2006). (R. 224, Suppl. to Mot. for New Trial at 9.) In its instructions, this Court instructed the

jury on the legal basis of Plaintiff's retaliation claim, quoting directly from 42 U.S.C. § 2000e-3.

(R. 206.) The Court further instructed:

> Plaintiff claims that she was singled out for more dangerous
> assignments, singled out for adverse treatment about her job
> performance, moved from her partner and her team, and/or refused
> to transfer her, and/or directed her to more dangerous calls by
> Defendant City of Chicago, through its agents because she
> complained about gender discrimination.
>
> Plaintiff must also prove by a preponderance of the evidence that
> Defendant City of Chicago singled her out for more dangerous
> assignments, singled her out for adverse treatment about her job
> performance, moved her from her partner and her team, and/or
> refused to transfer her, and/or directed her to more dangerous calls
> because she complained of gender discrimination. To determine
> that Plaintiff Lewis was singled out for more dangerous
> assignments, singled out for adverse treatment about her job
> performance, moved from her partner and her team, and/or refused
> to transfer her, and/or directed her to more dangerous calls because
> she complained of gender discrimination, you must decide that
> Defendant City of Chicago would not have singled her out for
> more dangerous assignments, singled her out for adverse treatment
> about her job performance, moved her from her partner and her
> team, and/or refused to transfer her, and/or directed her to more
> dangerous calls if she had not complained of gender discrimination
> but everything had been the same.
>
> To succeed on this claim, Plaintiff must prove by a preponderance
> of the evidence that the challenged actions are ones that a
> reasonable employee would find to be materially adverse such that
> the employee would be dissuaded from engaging in the protected
> activity.

7

(Tr. at 1021-22.) Plaintiff argues that the final paragraph conflicts with *White*. (R. 224, Suppl. to Mot. for New Trial at 9.). To the contrary, this language comes directly from the Supreme Court's decision in *White*:

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' . . . We speak of *material* adversity because we believe it is important to separate significant from trivial harms. . . .

*White*, 548 U.S. at 67-68 (emphasis in original); *see also Metzger v. Ill. State Police*, 519 F.3d 677, 683 (7th Cir. 2008) ("A 'materially adverse action' in the context of Title VII's anti-retaliation provision means any conduct that might dissuade a reasonable employee from lodging a discrimination charge."). During the jury instruction conference, Plaintiff's counsel herself suggested the inclusion of the above language. In the course of the parties' discussions with the Court, the following exchange occurred:

> Ms. Kurtz: And, your Honor, with respect to identifying the specifics, what we would propose is if we're going to identify the specifics that we try to agree on some language. We have pulled out from the 7th Circuit's opinion, which would be 'singled out for more dangerous assignment, singled out for adverse treatment about her job performance, refused a transfer, directed her to more dangerous calls, moved her from her partner and her team and/or engaged in conduct' *and exactly from White and the 7th Circuit's instruction, 'that must be one that a reasonable employee would find to be materially adverse, such as the employee would be dissuaded from engaging in the protected activity.'*

> The Court: That sounds accurate.

8

> Mr. King:    . . . We certainly agree with the materially adverse language. That does come out of *White.*
>
> Ms. Kurtz:   Right.

(Tr. at 916 (emphasis added).) Plaintiff now attempts to argue that the instruction is improper because it essentially requires proof of an adverse employment action, as that term is defined with respect to discrimination claims. This Court disagrees. The instruction does not call for proof of an "adverse employment action" as required for a discrimination claim, but instead directly tracks the language of *White* regarding what constitutes a materially adverse action in the context of a retaliation claim.[2] The Court finds no error in the instruction.

Plaintiff further argues that the inclusion of the word "also" in the second paragraph was confusing and prejudicial to her rights. Although the word "also" inadvertently appeared in the second paragraph due to a last-minute re-ordering of the paragraphs, its inclusion was insignificant and harmless. (*See* Tr. at 936-37.) The retaliation instruction, taken as a whole, correctly advised the jury that it must determine whether Plaintiff proved by a preponderance of the evidence that Defendant City of Chicago singled Plaintiff out for adverse treatment because she complained about gender discrimination. The Court notes that Plaintiff did not object to the word "also" in the second paragraph; even assuming Plaintiff's counsel was unaware of the language until it was read to the jury, as she asserts, she could have objected following the jury

---

[2] Seventh Circuit Pattern Jury Instruction 3.02 does not contain suggested language defining the adverse employment action element of a retaliation claim, instead stating: "What constitutes an 'adverse employment action' in the context of a retaliation claim is not entirely clear. *See Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 746 (7th Cir. 2002). The Committee does not use 'adverse action' in this instruction as a term of art, but merely as a placeholder for the specific act alleged." Seventh Circuit Pattern Jury Instruction 3.02, Comment D.

9

instructions and prior to the jury's deliberations, and requested a clarifying instruction. In fact,
after the Court completed reading the instructions and verdict forms to the jury, Defendants'
counsel noted a minor error in one of the verdict forms, and alerted the Court to it. (Tr. at 1030.)
The Court stated that it would make the correction, and then asked, "Anything else?" (*Id.*)
Plaintiff's counsel said nothing about any error in the use of the word "also" in the retaliation
instruction. (*See id.*) The Court finds no error, plain or otherwise, in the instruction given.

### D. Defendants' Instruction No. 10

Plaintiff next argues that she should be granted a new trial based on the Court's decision

to give Defendants' Instruction No. 10, which stated:

> In deciding Plaintiff Lewis's claims, you should not concern
> yourselves with whether Defendants' actions were wise,
> reasonable, or fair. Rather, your concern is only whether Plaintiff
> Lewis has proved that Defendant City of Chicago and/or Defendant
> Williams denied her the opportunity to participate in the IMF
> Detail in Washington D.C. because of her gender, and whether
> Defendant City of Chicago took any of the actions identified in the
> previous instruction in retaliation for her complaint of gender
> discrimination.

(Tr. at 1022-23.) The bulk of this language was taken directly from Seventh Circuit Pattern Jury

Instruction 3.07, and was simply modified to incorporate the allegations in this case. Plaintiff

nevertheless argues that use of the word "and" in this instruction created confusion and misled

the jury into believing that she had to prove both discrimination and retaliation in order to prevail

on either claim. (R. 211, Suppl. to Mot. for New Trial at 12.) The instruction contains the word

"and" simply because Plaintiff had two distinct claims—gender discrimination and retaliation.

There is no basis for concluding that this instruction misled or confused the jury in light of the

entirety of the instructions, which properly advised the jury on the applicable law as to each

10

claim, and also instructed that Plaintiff had distinct claims for gender discrimination and retaliation. Indeed, at the end of the instructions when the Court was explaining the verdict forms, the Court reiterated that there were distinct claims to be decided by the jury:

> If you have been paying close attention to the instructions, you realize there are three decisions you are being asked to make in this case. I am going to go over those decisions with you as well as the verdict forms at this point.

(Tr. at 1027.) The Court went on to explain that those three decisions were whether the City discriminated against Plaintiff; whether Williams discriminated against Plaintiff; and whether the City retaliated against Plaintiff. (*Id.* at 1027-30.) It was clear from the instructions in their entirety that these were separate decisions to be made, and the Court finds no error in the instructions given.

### E.     Plaintiff's Proposed Pretext Instruction

Plaintiff next argues that she is entitled to a new trial because the Court refused to give her proposed jury instruction on pretext. (R. 224, Suppl. to Mot. for New Trial at 12-13.) This proposed instruction stated in pertinent part: "You may choose not to accept an explanation offered by Defendants for their actions or inactions, if you disbelieve the explanations offered or if you find that the proffered explanations are a pretext for some other reason . . . ." (Tr. at 918; R. 211, Suppl. to Mot. for New Trial, Ex. G, Pl.'s Proposed Instruction No. 5.) The Seventh Circuit does not have a pattern jury instruction on pretext. As the Seventh Circuit has explained, the "burden-shifting model" established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which encompasses the notion of pretext, applies to pretrial proceedings and not to the jury's evaluation of the evidence at trial. *Gehring v. Case Corp.*, 43

11

F.3d 340, 343 (7th Cir. 1994). "Once the judge finds that the plaintiff has made the minimum necessary demonstration (the 'prima facie case') and that the defendant has produced a[ ] neutral explanation, the burden-shifting apparatus has served its purpose, and the only remaining question—the *only* question the jury need answer—is whether the plaintiff is a victim of intentional discrimination." *Id.* (emphasis in original).

At trial, "it is the prerogative of the jury to weigh and balance the credibility of each and every witness and disbelieve or believe any or all reasonable testimony and evidence offered to support an employment decision." *Hasham v. Calif. State Bd. of Equal.*, 200 F.3d 1035, 1045 (7th Cir. 2000). Although it is permissible for the jury to infer that the employer's stated reasons are pretextual, "a judge need not deliver instructions describing all valid legal principles." *Id.* at 1051. "Rather than describing each possible inference of the evidence, the judge may and usually should leave the subject of the interpretation of the evidence to the argument of counsel." *Id.*; *see also Gehring*, 43 F.3d at 343 (no error in judge's refusal to instruct jury that if it did not believe the employer's explanation for its decisions, it could infer that employer was trying to cover up discrimination). That is what the Court did here, and indeed, Plaintiff's counsel argued in closing that it was the jury's province to decide which testimony to believe, that the Defendants' explanations were pretextual, and that Plaintiff's account was more credible. (*See* Tr. at 948-960.) The Court finds no error in the instructions given.

## F.    Failure to Give General Instructions

Plaintiff next argues that the Court improperly failed to give the general instructions contained in its standing order in civil cases. (R. 224, Suppl. to Mot. for New Trial at 25.) The Court did not give these instructions because neither party requested them. If Plaintiff wanted

12

any or all of those instructions read to the jury, it was her burden to request them. *See Republic Tobacco Co. v. N. Atlantic Trading Co.*, 381 F.3d 717, 733 (7th Cir. 2004) (party who fails to tender an instruction or object to the failure to give an instruction waives an attack on its absence).

Plaintiff acknowledges in her motion that she did not request the general instructions, and instead argues that she presumed the Court would give these instructions without being asked. (R. 238, Pl.'s Reply at 30.) Even if Plaintiff's counsel was under the mistaken assumption that this Court would give all the general instructions without a request from one of the parties, which is not this Court's practice, it would have been readily apparent to her once the Court instructed the jury that the general instructions were not given. Plaintiff's counsel could have alerted the Court to her concern following the jury instructions and before deliberations began, but she did not do so. Her failure to alert the Court to this issue is particularly perplexing given that, as stated above, a discussion between counsel and the Court ensued following the jury instructions and before the jury began deliberating regarding one of the verdict forms. Although the Court specifically asked counsel if there was anything else that needed to be discussed, Plaintiff's counsel said nothing about the general instructions at this or any other time. (Tr. at 1030.) The Court finds no error, plain or otherwise, in the failure to give the general instructions.

## II.    Evidentiary Rulings

Plaintiff next argues that several of this Court's evidentiary rulings "were prejudicial to Plaintiff, affected the outcome, and cost her a fair trial." (R. 224, Suppl. to Mot. for New Trial at 13-22.) A party seeking a new trial based on erroneous evidentiary rulings bears a "heavy burden." *Alverio v. Sam's Warehouse Club*, 253 F.3d 933, 942 (7th Cir. 2001). "The decision

13

whether to admit evidence is a matter peculiarly within the competence of the trial court . . . ."

*Manuel v. City of Chicago*, 335 F.3d 592, 595 (7th Cir. 2003). Even if a judge's rulings are found to be erroneous, a new trial will be warranted only if "the error had a substantial and injurious effect or influence on the determination of a jury . . . and the result is inconsistent with substantial justice." *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005).

## A.      Plaintiff's March 13, 2003 Injury

Plaintiff first argues that the Court erred in excluding evidence pursuant to Federal Rule of Evidence 403 pertaining to an on-duty injury Plaintiff suffered. (R. 224, Suppl. to Mot. for New Trial at 13.) Rule 403 affords the district court discretion to exclude evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. "[E]vidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but also because its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Thompson v. City of Chicago*, 472 F.3d 444, 456 (7th Cir. 2006). "The balancing of probative value and prejudice is a highly discretionary assessment." *Manuel*, 335 F.3d at 596; *see also Cerabio*, 410 F.3d at 994.

The evidence at issue involved injuries Plaintiff suffered on March 13, 2003, when she was hit in the head with a sledgehammer by another officer during a forced entry into a residence and then fell down a flight of stairs ("the Sledgehammer Incident"). At the summary judgment stage, Plaintiff argued that Williams orchestrated the Sledgehammer Incident in an attempt to have her seriously injured or killed in retaliation for her complaints of gender discrimination. *Lewis*, 428 F. Supp. 2d at 797. The Court rejected this claim, finding no evidence that Williams

14

was responsible for Plaintiff being hit with the sledgehammer by another officer, or that he orchestrated the events of March 13, 2003. *Id.* The Seventh Circuit agreed, concluding: "Lewis does not provide any evidence that her injury was anything other than an accident." *Lewis*, 496 F.3d at 650. Prior to trial, this Court granted Defendants' motion in limine and excluded evidence regarding the Sledgehammer Incident.[3] (R. 179, Minute Entry.) Making an offer of proof at trial, Plaintiff's counsel again acknowledged that there was no evidence that the other officer had hit Plaintiff intentionally, or that Williams had orchestrated the incident. (Tr. at 223.) Without such evidence, the details of the Sledgehammer Incident had little probative value in this employment discrimination case, and were highly prejudicial to the defense, creating an undue risk that the jury would reach a verdict based on sympathy for Plaintiff. *See Thompson*, 472 F.3d at 452.

Contrary to Plaintiff's assertion, this Court did not "acknowledge" during the jury instruction conference that the Sledgehammer Incident evidence should not have been excluded. (*See* R. 224, Suppl. to Mot. for New Trial at 14.) The Court merely indicated that it had carefully re-considered the issue of the Sledgehammer Incident at various points in the trial, balancing the probative value against its prejudicial effect, but ultimately reaffirmed its prior conclusion:

> . . . Every night I went home and reconsidered, believe it or not, what I would do about that. I think the record as it exists is appropriate, given the probative value of the sledgehammer incident versus the undue prejudice to both of the defendants in this case.

---

[3] In making its rulings on the pretrial motions in limine, the Court expressly stated that "[a]ll of the rulings are conditional and subject to being revisited at trial." (R. 179, Minute Entry.)

What I mean by that is the record is that Ms. Lewis was injured in the spring of '03 after suffering alleged emotional damage that started in the latter part of '02. I would certainly allow you tomorrow, Ms. Kurtz, to argue that the depression that Ms. Lewis was suffering from in '02 and early '03 left her in a vulnerable state which may have contributed to her injury, but that's as far as you can go.

But I've felt that you could argue that with the facts that were in the record, and that's why I did not allow you to go any further getting into this very specific incident that was unfortunate of what occurred when a fellow Officer hits Ms. Lewis with a sledgehammer and then her injury resulting not only from the sledgehammer hitting her in the head but also from a not-inconsequential fall down a flight of stairs.

That, to me, just went too far down the road of proximate cause for the jury to hear all that. I just think it would have been too prejudicial to the defendants. But for the purposes of tomorrow, you can argue as I've already indicated if you choose to do so. You don't have to. It's strictly up to you. . . .

(Tr. at 913-14.) Plaintiff's counsel did in fact make that argument to the jury. (Tr. at 943-44; 958-59.)

Moreover, although Plaintiff was not permitted to present evidence detailing the Sledgehammer Incident, in accordance with the Seventh Circuit's opinion, she was permitted to present evidence that Williams singled her out for dangerous assignments in retaliation for her complaints of gender discrimination, including: assigning her to investigate a citizen complaint by herself; assigning her to a "shots fired" call; and assigning her two different partners whom Plaintiff believed were dangerous. (See Tr. at 181-209.) Plaintiff was also permitted to present evidence that on March 13, 2003, Williams reassigned her from an in-progress burglary call to a more dangerous assignment, and that this was unusual and had not occurred prior to her discrimination complaint. (Tr. at 225-29.) Plaintiff was also permitted to tell the jury that she is

16

currently on disability due to an on-duty injury. (*Id.* at 229.) Based on the record, the exclusion of the Sledgehammer Incident did not deny Plaintiff a fair trial.

The Court also rejects Plaintiff's argument that evidence of the Sledgehammer Incident should have been admitted as to her claim for damages. (R. 224, Suppl. to Mot. for New Trial at 17; R. 238, Pl.'s Reply at 21-23.) As an initial matter, this argument is essentially moot, since the jury did not find for Plaintiff on the issue of liability and therefore never reached the issue of damages. Furthermore, without some evidence that Defendants' actions caused Plaintiff's accidental injury, there would be no basis under Title VII to hold Defendants liable for Plaintiff's damages related to her on-duty injury. Plaintiff's citation to state law negligence cases do not convince the Court otherwise. (*See* R. 224, Suppl. to Mot. for New Trial at 17-18.) Nor is the Court persuaded by Plaintiff's citation to *Murray v. Kutzke*, 967 F. Supp. 337, 344 (N.D. Ill. 1997), in which there was evidence that the plaintiff's alleged harasser deliberately failed to assist her, directly resulting in her physical injury. In this case, by contrast, there is no evidence that Williams deliberately failed to assist Plaintiff, or even that he was present during the Sledgehammer Incident. The other cases cited by Plaintiff were decided outside the Title VII context or involve factual situations entirely distinct from this case; they do not persuade the Court that it was error to exclude the highly inflammatory evidence of the Sledgehammer Incident. (*See* R. 238, Pl.'s Reply at 21-22.) Based on the record, the Court finds no error in the exclusion of this evidence.

## B. Denial of Surgery

Plaintiff next argues that the Court erred in excluding evidence that the City improperly denied her request for surgery. At the summary judgment stage, Plaintiff asserted that her

17

doctors had recommended surgery on her neck, but that the City medical section failed to approve her request in retaliation for her complaints of gender discrimination. *Lewis*, 428 F. Supp. 2d at 791. The Court rejected this claim, finding no evidence of a link between the denial of Plaintiff's medical request and her complaints of discrimination. *Id.* On appeal, the Seventh Circuit mentioned in its recitation of the facts that Plaintiff claimed she had been denied "proper medical care," but did not discuss Plaintiff's denial of surgery claim anywhere in its analysis or remand for a trial on this claim. *See Lewis*, 496 F.3d at 650, 654-56.

Prior to trial, this Court excluded the evidence relative to the denial of surgery under Rule 403. (R. 156, Defs.' Mot. in Limine No. 7; R. 179; Minute Entry.) During an offer of proof at trial, Plaintiff's counsel again acknowledged that she did not have any evidence connecting the alleged denial of surgery to Williams, or any evidence indicating that the decision-makers within the City medical section had knowledge of her discrimination complaint. (Tr. at 233-235.) This Court therefore hewed to its decision to exclude the evidence pursuant to Rule 403. (Tr. at 235.) This evidence had very limited probative value and a high risk of unfair prejudice to Defendants. Among other things, allowing Plaintiff and numerous medical witnesses to testify about her difficulties in obtaining medical treatment created a substantial risk that the jury might reach a verdict out of sympathy for Plaintiff. *See Thompson*, 472 F.3d at 452. This evidence was properly excluded as an exercise of this Court's discretion under Rule 403.

## C. The EEOC's Administrative Decision

Plaintiff next argues that the Court erred in excluding evidence of the EEOC's administrative finding of discrimination. (R. 224, Suppl. to Mot. for New Trial at 19-20.) As a general proposition, administrative findings of discrimination may be admitted under Federal

18

Rule of Evidence 803(8)(c). *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 624 (7th Cir. 2003); *Halloway v. Milwaukee County*, 180 F.3d 820, 827 n.9 (7th Cir. 1999). However, "the district court retains significant discretion as to whether such material ought to be admitted." *Young*, 327 F.3d at 624. In particular, the district court must determine whether the prejudicial effect of admitting the administrative finding outweighs its probative value. *Id.*

In this case, Plaintiff sought to introduce the EEOC's administrative determination, which consisted of the following statement: "I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent denied Charging Party an overtime and training opportunity and retaliated against Charging Party by reassigning her in violation of Title VII." (R. 161, Defs.' Mot. in Limine No. 12, Ex. A.) This conclusory statement had little probative value, since the jury would hear all the admissible evidence relating to Plaintiff's allegations of gender discrimination and retaliation and would decide for itself whether Plaintiff's claims were meritorious. *See Tullos v. Near North Montessori Sch., Inc.*, 776 F.2d 150, 153-54 (7th Cir. 1985) (upholding exclusion of EEOC investigative report where conclusion essentially duplicated issue for determination at trial). The evidence also created an undue risk of confusion, because the jury might presume that the matter of discrimination had already been decided by another entity. *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.*, 867 F. Supp. 686, 692 (N.D. Ill. 1994) ("[P]resenting the administrative findings with respect to plaintiff's charge of discrimination is tantamount to saying 'this has already been decided and here is the decision.'") (citing *Tulloss*, 776 F.2d at 154); *see also Conrad v. PTO Servs., Inc.*, No. 95-2622, 1996 WL 296652, at *3 (N.D. Ill. Jun. 3, 1996) (excluding EEOC's finding of no discrimination because the EEOC's "bare conclusion without any detailed factual findings

contains little if any probative value that is substantially outweighed by unfair prejudice to [plaintiff]."). The Court finds no error in the exclusion of this evidence.

## D. City's Internal Investigation

Plaintiff next argues that the Court erred in excluding evidence pertaining to the City's internal investigation. Following the filing of Plaintiff's grievance, the City conducted an internal investigation and ultimately exonerated Williams. (*See* R. 161, Defs.' Mot. in Limine No. 12.) In Plaintiff's view, this evidence was relevant to show that the City failed to remedy her complaints of discrimination and retaliation. (R. 224, Suppl. to Mot. for New Trial at 19-20.) Defendant sought to exclude this evidence for the same reasons it sought to exclude the EEOC administrative determination.[4] This evidence created an undue risk of confusion in that the jury might simply adopt the result of the internal investigation rather than come to its own conclusion after hearing all the evidence. *See Tullos*, 776 F.2d at 153-54; *see also Moore v. Principi*, No. 00-2975, 2002 WL 31767802, at *8 (N.D. Ill. Dec. 10, 2002) (excluding evidence of internal investigation conducted by defendant on plaintiff's discrimination charge due to prejudicial effect if jury perceived the ultimate issues in the case had already been decided by another entity). This evidence was properly excluded under Rule 403.

## E. Defendant Williams' Promotion

In a similar vein, Plaintiff argues that the Court erred in excluding evidence that Williams was promoted in the years since Plaintiff's EEOC charge. (R. 224, Suppl. to Mot. for New Trial

---

[4] Although the result of the investigation was favorable to them, Defendants state that they considered it unfair to argue for the exclusion of the EEOC determination on the one hand but not the City's own administrative determination on the other. (R. 228, Defs.' Joint Resp. to Mot. for New Trial at 25 n. 16.) Defendants raised both arguments in the same motion in limine. (R. 116, Defs.' Mot. in Limine No. 12.)

at 19-20.) Prior to trial, this Court excluded any evidence or argument that Williams was promoted as a "reward" for his alleged discriminatory conduct toward Plaintiff, or that he benefitted from favoritism based on race or the fact that his father was a police officer. (R. 155, Defs.' Mot. in Limine No. 6; R. 179, Minute Entry.) Such evidence was highly speculative and had little probative value, given that the issues to be decided pertained to the Defendants' treatment of Plaintiff, not the City's treatment of Williams. There was also a risk of undue prejudice and juror confusion if the jury heard speculative and potentially inflammatory evidence that Williams was promoted because of his race or family relations. This evidence was properly excluded as an exercise of this Court's discretion under Rule 403.

## F.    Other Officers' Statements

Plaintiff next argues that the Court erred in excluding statements by Plaintiff's fellow officers, including Officers Muhney, Oliver, Weatherspoon and Davis, speculating that Defendants had, or might in the future, single Plaintiff out for adverse treatment in retaliation for her gender discrimination complaints. (R. 224, Suppl. to Mot. for New Trial at 21.) These statements were properly excluded because they amounted to mere speculation by non-decision-makers about Defendants' possible motives, which is not evidence of discrimination. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001) ("Statements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant to an inquiry of discrimination."); *Chiaramonte v. Fashion Bed Grp.*, 129 F.3d 391, 397 (7th Cir. 1997) ("Statements by inferior employees are not probative of an intent to discriminate by the decisionmaker.").

Moreover, even though the Court barred this evidence, the jury heard testimony that other

21

officers warned Plaintiff to "watch her back." During her testimony, Plaintiff testified that on March 13, 2003, Officers Weatherspoon and Davis told her "about Lieutenant [Williams] going off the day before, that he had found out about the [discrimination] complaint, and they told me to watch my back, that he was definitely out to get me." (Tr. at 225.) Plaintiff called Officer Weatherspoon as a witness, and although he was free to testify about events that he personally witnessed, Plaintiff's counsel did not ask him any questions about this incident. (*See* Tr. at 696-700.) Plaintiff mischaracterizes the record when she suggests that this Court precluded her from calling Officer Davis as a witness. (R. 224, Suppl. to Mot. for New Trial at 21.) In reference to Officer Davis, this Court stated, "If he can testify to the defendant's acting in a certain manner and relates that to the EEOC complaint, that's fine; but if he cannot, then it's just rank speculation and it's not going to get in this record." (Tr. at 636.) Plaintiff did not call Officer Davis to testify.[5] Based on the record, the evidence of other officers' speculations was properly excluded.

## G. Alleged Acts of Discrimination Toward Other Employees

Finally, Plaintiff argues that she should have been allowed to present evidence of alleged acts of gender discrimination and retaliation suffered by other employees at the hands of other police supervisory personnel. (R. 224, Suppl. to Mot. for New Trial at 22.) At the summary

---

[5] Plaintiff asserts, without any evidentiary support, that Officer Davis failed to appear in response to her subpoena. (R. 238, Pl.'s Reply at 26-27.) She suggests that defense counsel improperly advised various witnesses not to appear in response to her subpoenas. (R. 224, Suppl. to Mot. for New Trial at 23-24 & Ex. I, Decl. of Dana L. Kurtz.) Plaintiff does not point to any place in the record where she raised this issue with the Court, nor does the Court have any independent recollection of her bringing the matter to the Court's attention during trial. Defense counsel vehemently denies these accusations. (R. 228, Defs.' Joint Resp. at 31 n. 21 & Ex. C, Affidavit of Alan S. King.)

judgment stage, this Court rejected Plaintiff's Section 1983 claim against the City, finding that Plaintiff failed to demonstrate that the City had an express policy of discriminating against women, or that the City had a widespread practice of ignoring allegations of gender discrimination and retaliation. *Lewis*, 428 F. Supp. 2d at 798-801. The Seventh Circuit affirmed this ruling. *Lewis*, 496 F.3d at 656. The issues to be decided at trial were solely whether Defendants discriminated or retaliated against Plaintiff. *See id.* at 656-57. Evidence of alleged discrimination suffered by other employees was of limited relevance to these issues. *See, e.g., Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002) ("Evidence of generalized racism directed at others is not relevant unless it has some relationship to the employment decision in question."). The minimal probative value of this evidence was substantially outweighed by the danger of unfair prejudice to Defendants, the likelihood of juror confusion, and the unnecessary delay "inherent in allowing a number of 'mini-trials' over other allegations of discrimination." *See Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (affirming district court's exclusion of evidence that supervisor discriminated against other employees because such evidence had slight probative value and significant potential for prejudice, juror confusion, and delay); *Speedy v. Rexnord Corp.*, 243 F.3d 397, 405-06 (7th Cir. 2001) (district court properly excluded evidence relative to supervisor's alleged harassment of two other employees, because such evidence was highly prejudicial). This evidence was properly excluded.

## III.    Defendants' Closing Argument

Plaintiff next argues that certain statements made by defense counsel during closing argument unfairly prejudiced her. (R. 224, Suppl. to Mot. for New Trial at 23-24.) Specifically, Plaintiff argues that defense counsel improperly criticized her for failing to call witnesses who

23

could corroborate her story. (*Id.* at 23.) Plaintiff never objected to this or any other comment made during closing argument, and she has thus waived her right to attack the jury verdict on this ground. *Doe By and Through G.S. v. Johnson*, 52 F.3d 1448, 1465 (7th Cir. 1995); *Walden v. Ill. C.G. R.R.*, 975 F.2d 361, 366 (7th Cir. 1992); *Deppe v. Tripp*, 863 F.2d 1356, 1364 (7th Cir. 1988). "Any potentially improper statements should have been called to the attention of the trial judge, in order that [ ]he might be given a timely opportunity to correct any prejudice that might result from such remarks." *Doe*, 52 F.3d at 1465. Plaintiff did not do that here. (*See* Tr. at 1002-03.)

Even if the objection were not waived, Plaintiff would face a heavy burden in demonstrating that she is entitled to a new trial on this ground. The Seventh Circuit has emphasized that "improper comments during closing argument rarely rise to the level of reversible error." *Doe*, 52 F.3d at 1465; *see also Valbert v. Pass*, 866 F.2d 237, 241 (7th Cir. 1989). The bulk of the comments Plaintiff points to were defense counsel's comment on the relative strength of the parties' evidence, including that a number of Plaintiff's witnesses did not corroborate her account of events, other than to state that Plaintiff had complained to them about alleged discrimination. (*See* Tr. at 1002-03.) Counsel's argument that the lack of corroboration raised doubts about the credibility of Plaintiff's disputed testimony was not improper. *See Littlefield v. McGuffey*, 954 F.2d 1337, 1347 (7th Cir. 1992) (counsel's argument that "there's not a single witness, not a single witness put forth to corroborate any story that he was allegedly told" was not improper); *see also Doe*, 52 F.3d at 1465 (defense counsel's reference to missing witness and evidence in closing did not constitute error warranting a new trial).

Although defense counsel may have been approaching the outer limits of proper argument

24

when he argued that Plaintiff's "perception . . . is not evidence," when placed in context, it is

apparent that he was arguing (albeit somewhat inartfully) that Plaintiff's subjective belief that she

was the victim of discrimination had to be viewed against the other evidence in the case. (*See* Tr.

at 1004-05.) This was a theme repeated throughout the closing arguments of both defense

counsel. (*See, e.g.,* Tr. at 976 ("Now, Officer Lewis may believe the things she tells you. I don't

know. But it is not reasonable to believe . . . that Lieutenant Williams would endanger the life of

other officers to get back at the plaintiff for filing the grievance. But that was her testimony.").

The Court finds it unlikely that this one statement misled the jury into believing that Plaintiff's

testimony was not evidence of discrimination. Moreover, Plaintiff's counsel had an opportunity

to respond to the defense argument in her rebuttal, and she argued that it was up to the jury to

decide whose account to believe, and that Plaintiff's version was the more credible one. She

further stated:

> You are going to hear an instruction from the Judge that says
> neither party is obligated to call every witness in the case.[6] We
> could have called one witness. They could have called 50
> witnesses. It's not required. And if I tried to call in every single
> witness, you would be sitting here past Christmas, on the 26th. I
> believe that the witnesses that we called in this case provided you
> with enough evidence to make a decision based upon the law and
> based upon the instructions that the Judge will give you.

(Tr. at 1010.) Based on the record, defense counsel's comments, "although perhaps somewhat

overzealous," did not misstate the evidence, nor were they "so inflammatory as to have misled or

improperly swayed the jury." *Wipf v. Kowalski,* 519 F.3d 380, 387-88 (7th Cir. 2008). The

---

[6] Plaintiff's argument that the prejudice caused by defense counsel's comments was
compounded by this Court's failure to give the general instructions contained in its standing
order is addressed in Section I above relative to the jury instructions. As stated therein, Plaintiff
never requested that the Court give these general instructions.

Court therefore rejects the argument that defense counsel's comments warrant a new trial.

## IV. Sufficiency of the Evidence

Finally, Plaintiff argues that she is entitled to a new trial because the jury's verdict was "against the manifest weight of the evidence." (R. 224, Suppl. to Mot. for New Trial at 25-26.) To obtain a new trial based on sufficiency of the evidence, Plaintiff must demonstrate that no rational jury could have rendered a verdict for Defendants. *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). In determining whether Plaintiff has met this standard, this Court must view the evidence in the light most favorable to Defendants, leaving issues of credibility and weight of the evidence to the jury, and must uphold the jury's verdict if it is supported by a reasonable basis in the record. *Wipf*, 519 F.3d at 384; *King*, 447 F.3d at 534. Plaintiff fails to meet this high standard. Contrary to Plaintiff's assertion that "[t]he evidence presented at trial in Plaintiff's favor was overwhelming," much of the evidence in this case was hotly disputed, and it was the province of the jury to decide whose account was more credible. (*See* R. 224, Suppl. to Mot. for New Trial at 25.) There is ample evidence in the record to support the jury's verdict in favor of the defense.

As to the gender discrimination claim, there was evidence to support a finding that Plaintiff did not suffer an adverse employment action when she was denied the opportunity to participate in the IMF detail, including that: security details are part of the regular work of a tactical officer, and tactical officers work a high number of security details each year; during her five years on the force Plaintiff worked on numerous security details, including security for the President and at the IMF meeting held in Chicago in November 2002; Plaintiff did not put her prior security details on her resume; and Officer Muhney, who volunteered to go on the IMF

26

detail but was not selected, later received a promotion. (Tr. at 244-58). There was also evidence to support a finding that Williams did not intend to discriminate against Plaintiff when he denied her request to attend the JMF detail, but that he was instead attempting to comply with the memorandum regarding hotel arrangements issued by his superior officer. (Tr. at 430-44, 570-77, 876-82.) There was a reasonable basis for the jury to conclude that Plaintiff did not prove she was discriminated against based on her gender.

As to the retaliation claim, there was evidence to support a finding that the retaliatiory incidents Plaintiff complained of were ordinary parts of her job and that each incident had an innocent explanation. As for the CAPS complaint, there was evidence that: investigating CAPS complaints was a normal part of an officer's duties; when Williams gave Plaintiff the CAPS complaint, he did not tell her to go investigate immediately; Plaintiff did not go investigate the CAPS complaint immediately, but instead waited around the office approximately 45 minutes until Officer Muhney arrived; Plaintiff and Officer Muhney went together and investigated the complaint without incident. (Tr. at 262-71, 333, 445-51.) Regarding her claim that Defendants intentionally "kicked back" her CAPS reports, there was evidence that the report Plaintiff initially submitted did not contain any detail about her investigation; the report she turned in thereafter did not indicate that any arrests were made or that drugs or cash were recovered; this report was returned to her by Commander Brown, not Williams, with a note indicating that more information was needed; Plaintiff resubmitted the report the following day with more information and the report was accepted. (Tr. at 277-291, 569-73.)

As for the "shots fired" call, there was evidence in the record that: police officers, including Plaintiff, routinely respond to "shots fired" calls, which occurred often in Plaintiff's

district; on the date of the incident, Plaintiff was riding with two other officers who were not her usual partners; Plaintiff and her partners were already in the process of responding to the call when Williams came over the radio and directed their car to respond; and Plaintiff and her partners responded to the shots fired call without incident. (Tr. at 271-77; 449-52.) Although Plaintiff testified that in her view Williams was intentionally trying to endanger her (and by extension, the other officers with whom she was riding), it was the province of the jury to decide that the defense version was more believable.

As for her change in partners and transfer, there was evidence in the record that: Plaintiff was teamed with a number of different officers during her five years on the force; Plaintiff was moved from her partner to another more experienced partner because Williams was concerned that her arrest statistics were low and that she was instead focusing on minor ordinance violations, which Williams viewed as a low priority; and Williams reassigned various officers in Plaintiff's unit during this period in order to improve the unit's performance record. (Tr. at 297-309, 460-85.)

As for her claim that she was improperly denied a transfer to the Special Operations unit ("SOS"), there was evidence that: it was difficult to get into SOS; other officers were denied transfers to SOS during this period; Williams was not the decision-maker regarding the transfer; when making a transfer decision, Chief Mauer considered the staffing needs within the District where the officer was presently working; at the time Plaintiff requested a transfer to SOS, three other officers from the Third District requested transfers to SOS and all three requests were denied; and Chief Mauer was not aware off Plaintiff's discrimination complaint when he denied her request for a transfer. (Tr. at 306-07, 318, 572-80, 880-93.)

28

As for the claim that Williams improperly reassigned Plaintiff from an in-progress burglary call to a narcotics call on March 13, 2003, there was evidence that: it was part of an officer's job to assist with narcotics calls; Plaintiff was not sure whether it was Williams who came over the radio and sent her car to the narcotics call; whomever came over the radio did not announce himself in the manner Williams usually did; in response to the radio command Plaintiff contacted Sergeant Goode, who directed her to assist with the narcotics call. (Tr. at 225-28, 310-11, 615-17.) There was thus a reasonable basis for the jury to conclude that Defendants did not unlawfully retaliate against Plaintiff.

In summary, the jury's verdict was amply supported by the evidence, and the Court declines to grant a new trial on this ground.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for a new trial (R. 211) is denied.

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated: June 30, 2008**

29